**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

JACOB T. STILL,

        Plaintiff,

vs.

JOSEPH D. SCHMIDT, et al.,

        Defendants.

Case No. 3:12-cv-00084-SLG

## ORDER RE MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed at Docket 25 by Defendants Schmidt, Brunger, Barnhardt, March, Erickson, Kitter, Blades, Heiker, and Knight. The remaining Defendant, Defendant McKeown, had not been served at the time the Motion was filed, but subsequently joined it at Docket 37 after service on him had been effected.[1] The Motion seeks dismissal of the Complaint filed by Plaintiff Jacob Still, a prisoner representing himself. Mr. Still opposed at Docket 32 and the moving Defendants replied at Docket 33. Oral argument was not requested by the parties and is not necessary to the Court's determination of the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts, as alleged under penalty of perjury in Mr. Still's Complaint, for purposes of this Motion to Dismiss, are as follows:[2]

---

[1] Defendant McKeown is identified in the Complaint as "Don McLean."

[2] Mr. Still and the Defendants included affidavits with their briefing on this Motion. As the affidavits contain factual matter outside the pleadings, the Court has not included them in this recitation of facts. *See discussion infra* at 10-11 (consideration of facts on 12(b)(6) motion limited to allegations made in the pleadings). However, the Court has considered the affidavits

For the duration of the events giving rise to this action, Mr. Still was incarcerated at Mat-Su Pretrial Facility ("MSPF").[3] Defendant Schmidt was the Commissioner of the Alaska Department of Corrections.[4] The remaining Defendants all worked at MSPF: Defendant Brunger was the superintendent, Defendant Barnhardt was the lieutenant, Defendants Erickson and Marsh were shift sergeants, Defendants Blades, Kitter, Knight, and McKeown were correctional officers, and Defendant Heiker was a security officer.

On May 7, 2010, Mr. Still and another inmate were transferred from Palmer Correctional Center to MSPF,[5] where they were both placed in segregation cell unit 3 ("Cell 3").[6] Mr. Still observed that the toilet in Cell 3 was not functioning and Defendants Ericson and Marsh were notified.[7] Two inmates in a neighboring cell informed Mr. Still that they had been transferred from Cell 3 the previous day because of the non-functioning toilet.[8] Defendant Ericson was again notified of the toilet issue and responded that "we have been having problems with this cell."[9] When Mr. Still

---

in a limited fashion solely with respect to Defendants' exhaustion argument. *See discussion infra* at 12-13 (consideration of matters outside the pleadings permitted for PLRA exhaustion purposes).

[3] Docket 1 at 1 ¶ 3.

[4] Docket 1 at 2 ¶ 4.

[5] Docket 1 at 2 ¶ 15.

[6] Docket 1 at 2 ¶ 16.

[7] Docket 1 at 3 ¶¶ 17-19.

[8] Docket 1 at 3 ¶ 20.

[9] Docket 1 at 3 ¶¶ 21-22.

3:12-cv-0084-SLG, *Still v. Schmidt*
Order Re Motions to Dismiss
Page 2 of 27

requested to be transferred to a cell with a functioning toilet, Defendant Erickson indicated that he had no knowledge of the reasons for Mr. Still's placement and was unable to transfer him.[10]

Mr. Still remained in Cell 3 with the non-functioning toilet for three days.[11] On the first day, Mr. Still "was able to hold his bowels with only moderate pains," which became "substantially more sever[e]" on the second day.[12] Mr. Still informed Defendants Marsh and Erickson of these symptoms and requested permission to use a toilet in another cell, which they denied.[13] Instead, Mr. Still and his cellmate were required to "defecate in a corner inside their cell and put the feces into small brown paper bags and store the fecal filled bags until meal service," when they were required to pass the bags out the same tray slot through which their meal trays were delivered.[14] On the evening of May 10, 2010, Mr. Still and his cellmate "flooded the segregation mod in [an] attempt to get the defendants to move plaintiff to a cell with a working toilet."[15]

Mr. Still alleges that Defendants Brunger and Barnhardt knew or reasonably should have known of these events.[16]

---

[10] Docket 1 at 3 ¶¶ 23-24.

[11] Docket 1 at ¶ 25.

[12] Docket 1 at 3 ¶¶ 26-28.

[13] Docket 1 at 3 ¶¶ 29-30.

[14] Docket 1 at 3 ¶¶ 31-32.

[15] Docket 1 at 3 ¶ 33.

[16] Docket 1 at 4 ¶ 34.

Mr. Still alleges that later in the evening of May 10, 2010, Defendants Marsh, Heiker, McKeown, Blades, and Kitter came to Cell 3, opened the cell door, and questioned him about the flooding of the unit.[17]  Defendant Marsh had a large canister of "O.C. Pepper Spray held at ready."[18]  At Defendant Marsh's command, Mr. Still and his cellmate were handcuffed and then escorted to the shower, where they were secured while their personal and state-issued items were removed from Cell 3 and the water to the cell was shut off.[19]  Mr. Still and his cellmate were then led back to Cell 3, still handcuffed.  The cellmate slipped on a rag on the wet cement floor and "[a] small amount of water may have gott[e]n on one of the officers."[20]  Defendant Marsh then ordered Mr. Still, whose hands were still cuffed behind his back, to turn around; and when Mr. Still turned around, Defendant March pepper sprayed him in the face.[21]  Mr. Still attempted to walk toward the shower, but was forced back into Cell 3.[22] Defendants Marsh and Heiker then pepper sprayed Mr. Still and his cellmate, who were still handcuffed with their backs to the Defendants, emptying two canisters into the cell.[23]  Defendant Marsh then ordered the door to Cell 3 closed and the Defendants left

---

[17] Docket 1 at 4 ¶¶ 36, 38-39.

[18] Docket 1 at 4 ¶ 37.

[19] Docket 1 at 4 ¶¶ 40-44.

[20] Docket 1 at 4 ¶¶ 46-48.

[21] Docket 1 at 5 ¶¶ 49-51.

[22] Docket 1 at 5 ¶ 52.

[23] Docket 1 at 5 ¶¶ 53-54.

the unit.[24]  Mr. Still alleges that Defendants Blades, Kitter, and McKeown observed this incident but did not attempt to intervene.[25]

Mr. Still alleges that the Defendants left him in Cell 3, handcuffed, with no way to decontaminate, as they had shut off the water supply to Cell 3.[26]  Mr. Still maneuvered his hands in front of him and unsuccessfully attempted to rinse his face "with the only water available, this being the water contained in the toilet bowl[.]"[27]  Mr. Still alleges that by this point, he was "experiencing sever[e] respiratory difficulties," presumably from the pepper spray, and used the intercom button in Cell 3 to notify Defendant Knight, who was on duty in the control room, that he was on anxiety medication, unable to breathe, and close to losing consciousness, and that he required medical assistance.[28]  Mr. Still's cellmate also informed Defendant Knight that Mr. Still needed immediate medical assistance and stated that he wanted to make a report with the Alaska State Troopers.[29]  Mr. Still alleges that Defendant Knight responded "nobody is coming to help you so fuckin deal with it."[30]

---

[24] Docket 1 at 5 ¶ 56.

[25] Docket 1 at 5 ¶ 55.

[26] Docket 1 at 5 ¶ 57.

[27] Docket 1 at 5 ¶ 57.

[28] Docket 1 at 5-6 ¶¶ 60-62.

[29] Docket 1 at 6 ¶ 63.

[30] Docket 1 at 6 ¶ 64.

Mr. Still alleges that approximately an hour later, he was escorted to the shower and permitted to decontaminate.[31]  Afterward, he was not given a towel or clean clothing before being escorted back to Cell 3, naked, by Defendant Kitter, a female officer.  Mr. Still was locked in Cell 3, which was still contaminated, "with nothing to cover himself with or any place to sit down that was not contaminated" for over an hour, at which point he was escorted, still naked, to a different cell ("Cell 2") occupied by Mr. Still's previous cellmate and another incarcerated individual.[32]  After approximately 15-20 minutes, Mr. Still was provided with clothing.[33]

Mr. Still alleges that Defendant Barnhardt informed Mr. Still, presumably at some point after this incident, that "he is and has been on a 'spray first status,'" meaning that "officers were ordered to use pepper spray in the event of any disruptions."[34]  Mr. Still received three disciplinary write-ups from the incident.[35]

Mr. Still alleges that he attempted to filed a grievance regarding this incident, but that Defendants Barnhardt and Marsh told him that "as he was given disciplinary write-ups[,] the matter was not grievable[.]"[36]  They informed him that he could appeal the disciplinary write-ups to the superintendent after he had been found guilty.[37]  Mr. Still

---

[31] Docket 1 at 6 ¶ 66.

[32] Docket 1 at 6 ¶¶ 67-70.

[33] Docket 1 at 6 ¶ 71.

[34] Docket 1 at 6 ¶ 72.

[35] Docket 1 at 6 ¶ 74.

[36] Docket 1 at 6 ¶ 73.

[37] Docket 1 at 6 ¶ 73.

subsequently appealed the three disciplinary write-ups, but his appeals "did nothing to rem[e]dy the action of the defendants" described in his Complaint.[38]

On April 19, 2012, Mr. Still filed this prisoner civil rights Complaint under 42 U.S.C. § 1983. Mr. Still asserts that the Defendants are liable for conspiracy to violate his Eighth Amendment rights; excessive use of force and cruel and unusual punishment; failure to provide medical treatment and decontamination; violation his right to privacy; and violation of his right to due process.[39] Mr. Still also raises state tort claims, including negligence and the intentional torts of battery and assault.[40] Specifically, Mr. Still asserts the following specific claims:

- By "maliciously and sadistically" depriving Mr. Still of adequate living conditions, Defendants Ericson and Marsh committed a violation of his rights under the Eighth Amendment and the tort of negligence.[41]

- By using unnecessary force and a chemical agent against Mr. Still, Defendants Marsh and Heiker committed a violation of his rights under the Eighth Amendment and the torts of assault and battery.[42]

---

[38] Docket 1 at 7 ¶¶ 75-76.

[39] Docket 1 at 2-7.

[40] Docket 1 at 7-8.

[41] Docket 1 at 8 ¶¶ 78-79.

[42] Docket 1 at 8 ¶¶ 80-81.

- By failing to act, Defendants McKeown, Blades, and Kitter committed a violation of Mr. Still's rights under the Eighth Amendment and the tort of negligence.[43]

- By failing to ensure that Mr. Still received medical attention in compliance with D.O.C. policy, Defendant Marsh committed a violation of Mr. Still's Eighth Amendment rights and the tort of negligence.[44]

- By failing to notify the supervisor of Mr. Still's need for medical attention Defendant Knight committed a violation of Mr. Still's Eighth Amendment rights and the tort of negligence.[45]

- The actions of Defendants Blades and Kitter violated Mr. Still's Fourth Amendment right to privacy.[46]

- The actions of Defendants Barnhardt and Marsh violated Mr. Still's right to due process under the 14th Amendment.[47]

- Defendant Brunger "is respons[i]ble for all subordinates and ensuring inmates['] constitutional rights are upheld."[48]

---

[43] Docket 1 at 8 ¶¶ 82-83.

[44] Docket 1 at 8 ¶¶ 84-85.

[45] Docket 1 at 8 ¶¶ 86-87.

[46] Docket 1 at 8 ¶ 88.

[47] Docket 1 at 8 ¶ 89.

[48] Docket 1 at 8 ¶ 90.

3:12-cv-0084-SLG, *Still v. Schmidt*
Order Re Motions to Dismiss
Page 8 of 27

Mr. Still does not assert claims against Defendant Schmidt, stating that he has named Defendant Schmidt as a defendant "to aid in disclosure and production discovery[.]"[49]

Mr. Still names Defendants Barnhardt, Blades, Erickson, Heiker, Kitter, Knight, Marsh, and McKeown in their individual capacities and seeks declaratory judgment and monetary damages from each.[50] Mr. Still names Defendant Brunger in his individual and official capacities and seeks monetary, declarative, and injunctive relief.[51] Mr. Still names Defendant Schmidt solely in his official capacity and seeks injunctive relief only.[52] Mr. Still seeks an injunction requiring Defendants Schmidt and Brunger to implement D.O.C. policy to prevent the recurrence of the events described in the Complaint and requiring Defendant Schmidt or Brunger to expunge the three disciplinary convictions that Mr. Still received.

The Defendants filed their Motion to Dismiss on August 27, 2012, seeking dismissal of Mr. Still's Complaint for failure to state a claim for which relief can be granted. Mr. Still Opposed on November 9, 2012 and the Defendants replied on November 26, 2012. Defendant McKeown joined the Motion on January 14, 2013. Because the Defendants submitted extrinsic materials with the Motion, the Court issued

---

[49] Docket 1 at 8 ¶ 91.

[50] Docket 1 at 2, 8-9.

[51] Docket 1 at 2, 8-9.

[52] Docket 1 at 2, 9.

an order on January 23, 2013 giving Mr. Still notice of his opportunity to develop the record.[53]  No additional materials were submitted.

## DISCUSSION

### I.    Standard for Dismissal.

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of an action for failure to state a claim for which relief can be granted.

This Court applies the "facial plausibility" pleading standard as analyzed by the Supreme Court in *Ashcroft v. Iqbal.*[54]  Under that standard, to survive a Rule 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[55]  This plausibility standard requires "more than a sheer possibility" of entitlement to relief, though it need not rise to the level of probability.[56]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.[57]  If the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."[58]  But "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

---

[53] Docket 38; Docket 39.

[54] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[55] *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[56] *Id.*

[57] *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

[58] *Twombly*, 550 U.S. at 570.

rise to an entitlement to relief."[59]   Making such a determination is "a context-specific

task that requires the . . . court to draw on its judicial experience and common sense."[60]

Because Mr. Still is a self-represented prisoner, the Court must liberally construe

his pleadings and give him the benefit of the doubt.[61]   And before dismissing the action,

the Court must provide Mr. Still with an opportunity to amend, unless it is clear that

amendment would be futile.[62]

Mr. Still's Complaint asserts claims arising from events that occurred while he

was in confinement.   Accordingly, his claims are subject to the restrictions of the Prison

Litigation Reform Act ("PLRA").[63]   The PLRA contains such requirements as the

exhaustion of administrative remedies,[64] a prior physical injury,[65] and specific standards

for injunctive relief,[66] which were raised in the Defendants' Motion and are discussed

below.

---

[59] *Iqbal*, 556 U.S. at 679.

[60] *Id.* at 679 (citation omitted).

[61] *See Hebbe v. Plier*, 627 F.3d 338, 342 (9th Cir. 2010) ("[O]ur 'obligation' remains [after *Iqbal*], 'where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'") (citation omitted).

[62] *See Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) ("*Pro se* complaints . . . may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (citations and internal quotations omitted); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) ("The district court did not err in denying leave to amend because amendment would have been futile.").

[63] 42 U.S.C. § 1997e; 18 U.S.C. 3626.

[64] 42 U.S.C. § 1997e(a).

[65] 42 U.S.C. § 1997e(e).

[66] 18 U.S.C. § 3626(a)(1)(A).

## II. Defendants' Motion to Dismiss.

The Defendants argue that Mr. Still's Complaint merits dismissal for four reasons: (A) Mr. Still has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e, (B) Mr. Still has failed to allege physical injury as required by 42 U.S.C. § 1997e(e), (C) Mr. Still has failed to allege facts warranting injunctive relief, and (D) as against Defendants Schmidt and Brunger, Mr. Still has failed to allege facts showing personal participation by those Defendants.[67]

### A. Exhaustion of Administrative Remedies.

The Defendants first argue that Mr. Still's Complaint is barred because he has failed to exhaust his administrative remedies, as required under the PLRA.

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[68]

Failure to exhaust is an affirmative defense.[69]  Thus, the burden is on the defendant to prove it.[70]  However, if a lack of exhaustion has been shown, the burden then shifts to the plaintiff to prove the administrative remedies were not available to him. In deciding a motion to dismiss for failure to exhaust, a court is permitted to look beyond

---

[67] Docket 25 at 1-2.

[68] 42 U.S.C. § 1997e(a).

[69] *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012) (citations omitted).

[70] *Id.*

the pleadings to determine disputed issues of fact without converting the motion to one for summary judgment under Federal Rule of Civil Procedure 56.[71]

The Defendants attached an affidavit by Defendant Brunger to their Opposition and an affidavit by Sergeant Heather Land to their Reply, and Mr. Still attached an affidavit to his Opposition.[72] The affidavits testify to factual matter outside the Complaint. As some of the testimony presented addresses the issue of exhaustion and some goes to other issues raised in this Motion, the Court has limited its consideration of the affidavits to those portions that are relevant to the issue of exhaustion.

The Defendants assert and provide testimony that Mr. Still did not file any grievances arising from this incident.[73] In his Opposition, Mr. Still emphasizes the language from the PLRA that requires exhaustion of "such administrative remedies *as*

---

[71] The Ninth Circuit has "held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012) (quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)). Because "[e]xhaustion under the PLRA is not jurisdictional . . . a defendant may raise failure to exhaust under the PLRA in an unenumerated Rule 12(b) motion." *Id.* at 1210 (citing *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 869 (9th Cir. 2011), *cert. denied*, __U.S.__ (2012); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003)). In deciding such a motion, "the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 315 F.3d at 1120 (citing *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988)); *see also Akhtar*, 698 F.3d at 1210 (citing *Wyatt*, 315 F.3d at 1119-20).

[72] Docket 26 (Aff. of Brunger); Docket 32 (Aff. of Still); Docket 33-1 (Aff. of Land).

[73] Docket 25 at 4; Docket 33-1. Initially, Defendant Brunger testified in his affidavit that MSPF's "Facility and Standards officer Sgt. Heather Land has advised me that Still did not file any grievances while he was at [MSPF]." Docket 26 at 2 ¶ 3. When Mr. Still provided sworn testimony disputing this, Docket 32 at 12 ¶ 8, the Defendants changed positions and stated that "Still filed at least eleven grievances while in the Delta segregation at MatSu at various times from May, 7, 2010 until he was returned to the Palmer Correctional Center on March 16, 2012." Docket 33 at 2 (referencing Docket 33-1 at 2 ¶ 5 (Aff. of Land)). However, the affidavit of Sergeant Land attached to the Reply indicates that Mr. Still did not begin filing grievances until January 20, 2011.

*are available.*"[74]   As Mr. Still's Complaint and Opposition make clear, part of the basis for his action is that he was not permitted to file a grievance.[75]   Thus, he maintains that he should not be barred from bringing this action for failing to file a grievance because the grievance process was not available to him.[76]   The Defendants concede that the exhaustion requirement is excused where the grievance process is unavailable to a prisoner.[77]   However, they argue that the Ninth Circuit requires a prisoner to demonstrate that he took "reasonable and appropriate steps to exhaust his remedies" before the requirement can be excused and that Mr. Still has not made such a showing.[78]

The Ninth Circuit has held that to meet the burden of showing that a grievance procedure was unavailable, a prisoner must show "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable[.]"[79]   Here, both Mr. Still's Complaint and Opposition assert that MSPF staff prevented him from filing a grievance, thereby affirmatively interfering with his ability to exhaust.

The D.O.C. policy attached to Defendant Brunger's affidavit establishes the procedure for filing a grievance: a prisoner must "first attempt to speak directly with the

---

[74] 42 U.S.C. § 1997(e)(a) (emphasis added); Docket 32 at 2.

[75] Docket at 6 ¶ 73; Docket 32 at 2.

[76] Docket 32 at 2.

[77] Docket 33 at 2.

[78] Docket 33 at 2 (citing *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010)).

[79] *Albino*, 697 F.3d at 1033.

staff member aware of or directly involved with the incident."  If that attempt fails, the prisoner must then file a Request for Interview Form; if that does not resolve the issue, he must file a Prisoner Grievance Form; if that determination is unfavorable, he must then file a Grievance Appeal.  All documents are to be placed by the prisoner "in the appropriate locked box."  The policy requires MSPF to "make locked boxes available near each of the institutional housing units" for the filing of grievances.[80]

In his Complaint, Mr. Still alleges that he "attempted to grieve the defendants['] action" and was told that "as he was given disciplinary write-ups[,] the matter was not grievable[.]"[81]  He alleges that he was informed that he could appeal the disciplinary write-ups to the superintendent, which he subsequently did.[82]  Mr. Still supplements these allegations in his affidavit as follows:

> 5. I attempted to the best of my limited ability to exhaust all administrative remedies concerning claim one in the original complaint and was denied access to grievance forms or the grievance forms were not properly handles by the defendant's, as set forth in D.O.C. policy and procedure 808.03;
>
> 6. I attempted to the best of my limited ability to exhaust administrative remedies concerning the remaining claims in the complaint and was denied access to grievance forms, being informed that the matters at hand were disciplinary and not grievable, due to receiving three incident reports concerning the events described;
>
> 7. The locked box in the segregation unit of Mat-Su Pretrial (at the time of the incident complained) was marked "Books Only" and was used for library books.  Inmates are instructed to place all personal

---

[80] Docket 26-1 at 4.

[81] Docket 1 at 6 ¶ 73.

[82] Docket 1 at 6 ¶¶ 73-75.

mail and institution mail i.e. cop-outs and grievances under their cell door to be collected by the inmate janitor each evening[.][83]

The Defendants attached to their Reply an affidavit from Sergeant Heather Land, the MSPF compliance sergeant responsible for processing prisoner grievances. Sergeant Land testified that while disciplinary decisions cannot be grieved, Mr. Still could have filed grievances regarding his "claims of the non-working toilet, excessive force, subjecting an inmate to nudity, and not allowing a prisoner to access the grievance process[,]" as those claims "are separate and distinct from the disciplinary process[.]"[84] Sergeant Land further testified that Mr. Still's disciplinary write-ups were dismissed on appeal, and that "[e]ven if Still had been told that he could not grieve his issues because they were disciplinary in nature, Still could have grieved the issues after the disciplinary matters were dismissed."[85] Thus, the Defendants argue that Mr. Still's allegations and affidavit testimony do not show "that he took reasonable and appropriate steps to exhaust his remedies regarding his claims and that he was actually prevented from filing a grievance by any corrections officials."[86]

The parties present differing versions of the facts on the exhaustion issue: Mr. Still asserts that he was prevented from grieving his claims; the Defendants assert that he had the ability to do so. Construing the disputed facts in Mr. Still's favor for purposes of this Motion to Dismiss, the Court finds that he has plausibly alleged and testified that

---

[83] Docket 32 at 11-12 ¶¶ 5-8.

[84] Docket 33-1 at 3 ¶ 6.

[85] Docket 33-1 at 3 ¶ 7.

[86] Docket 33 at 2.

he took reasonable and appropriate steps to try to pursue his administrative remedies, and that the grievance process was not made available to him. Accordingly, the Court finds that, based on the record currently before the Court, the exhaustion requirement of the PLRA does not bar Mr. Still's claim.[87]

### B. Physical Injury.

The Defendants argue that Mr. Still "has failed to allege the requisite physical injury for a civil rights claim."[88] 42 U.S.C. § 1997e(e) places the following limitation on a prisoner's ability to bring suit: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." To satisfy this requirement, a prisoner must allege more than a de minimis physical injury.[89]

The Defendants argue that Mr. Still "alleges no physical injury whatsoever as a result of his claims."[90] Mr. Still asserts that he suffered injury from being pepper sprayed and that this injury was not de minimis.[91] The Defendants do not address this issue in their Reply.[92]

---

[87] This ruling is without prejudice to the Defendants seeking to raise the defense of exhaustion on summary judgment at a later stage in this action, after discovery has taken place.

[88] Docket 25 at 5; Docket 32 at 11-12 ¶¶ 5-6.

[89] *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) ("we hold today that for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than de minimis.").

[90] Docket 25 at 5.

[91] Docket 32 at 4.

[92] *See* Docket 33.

The Court finds the recently-issued decision of *Furnace v. Sullivan* dispositive on this issue.[93]  In *Furnace*, the Ninth Circuit reviewed the Northern District of California's grant of summary judgment to the defendants.   Mr. Furnace, a self-represented prisoner, had brought a civil rights action arising from the defendants' alleged denial of his religious request for vegetarian meals and their use of pepper spray on him.  Mr. Furnace was entitled to vegetarian meals for religious reasons.   One morning, the officers did not give Mr. Furnace his vegetarian breakfast.  The subsequent events were disputed.   The Defendants asserted that Mr. Furnace had actively held the food port open and attempted to reach through it in a threatening manner; Mr. Furnace alleged that he had merely rested his hands in the open port.   The Defendants asserted that they had struck Mr. Furnace with two short blasts of pepper spray; Mr. Furnace alleged that they had sprayed him for a full minute and emptied two canisters.

Mr. Furnace alleged that his face, chest, stomach and groin area were struck by the pepper spray, causing the skin to blister and burn.  After being pepper sprayed, Mr. Furnace was allowed to decontaminate in his cell, as required by prison procedure, and was not given a vegetarian breakfast.   Mr. Furnace alleged that he experienced a burning sensation for several days afterward and developed a rash in the groin area that may have resulted from the pepper spray.   On the basis of these events, Mr. Furnace claimed that the officers had violated his right to equal protection by failing to provide him with a vegetarian breakfast and had violated the Eighth Amendment by using excessive force on him.   The District Court found that Mr. Furnace had not

_____

[93] 705 F.3d 1021 (9th Cir. 2013).   This opinion was issued after the parties concluded their briefing on this motion.

demonstrated that the officers intentionally deprived him of his vegetarian breakfast and dismissed the equal protection claim on that basis. The District Court dismissed Mr. Furnace's Eighth Amendment claim on qualified immunity grounds, finding that, under the defendants' version of events, they could reasonably have perceived Mr. Furnace as a threat.

The Ninth Circuit affirmed the District Court's dismissal of Mr. Furnace's equal protection claim, but reversed and remanded its dismissal of his Eighth Amendment claim. The Ninth Circuit ruled that, when all inferences were drawn in the plaintiff's favor, genuine issues of material fact precluded summary judgment. In rendering this decision, the Ninth Circuit found that the difference between the parties' account of events (Mr. Furnace actively holding the food port open versus simply resting his fingers on it) and the discrepancy of the parties' accounts of how much pepper spray was used (two quick blasts versus a full minute that emptied two canisters) were material. The Ninth Circuit held that the District Court should have relied on Mr. Furnace's version of events for purposes of the summary judgment motion, as doing so would have impacted its qualified immunity determination. The Ninth Circuit then adopted the "generally recognized" rule, existent in other circuits, that "'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain."[94] The Ninth Circuit concluded that Mr. Furnace's injuries were "moderate" and that, under his

---

[94] *Id.* at 1028 (citing *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984), *cert. denied*, 470 U.S. 1085 (1985)); *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008)).

version of events, granting qualified immunity to the defendants on summary judgment was inappropriate.[95]

While the Ninth Circuit in *Furnace* did not explicitly hold that injuries suffered as a result of being pepper sprayed meet the physical injury requirement of the PLRA, the holding implicitly recognizes that pepper spray can result in physical injury. Moreover, *Furnace* was decided on a motion for summary judgment, which requires a greater factual showing from the plaintiff than a motion to dismiss. This Court reads the Ninth Circuit's holding in *Furnace* to indicate that injuries suffered as a result of being pepper sprayed "plausibly give rise to an entitlement to relief."[96]

Applying the precedent of *Furnace*, the Court finds that Mr. Still's allegations of being struck with two cans of pepper spray and not permitted to decontaminate meet the "physical injury" requirement of the PLRA. Accordingly, the Court finds that for purposes of this Motion to Dismiss, Mr. Still has adequately alleged physical injury.[97]

### C. Injunctive Relief.

The Defendants argue that Mr. Still has not alleged facts to justify the injunctive relief he seeks against Defendants Schmidt and Brunger.[98] They cite to 18 U.S.C. § 3626(a)(1)(A), part of the PLRA, which provides:

---

[95] *Id.* at 1029-30.

[96] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[97] The Court makes this ruling only in the context of this Motion to Dismiss; it has no bearing on Mr. Still's ability to maintain his claims later in this action, for example in the context of any summary judgment motions or at trial, where a stronger factual showing may be required.

[98] Docket 25 at 5.

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

The Defendants argue that Mr. Still "has not stated any facts which show the violation of a federal right that requires injunctive relief to issue" and that Mr. Still's Complaint makes "no mention of policies . . . and only cursory mention of disciplinary proceedings."[99] They additionally assert that Mr. Still "has also failed to exhaust the prisoner grievance regarding these claims for injunctive relief."[100]

Mr. Still seeks an injunction requiring Defendants Schmidt and Brunger to "implement the polic[ies] D.O.C. ha[s] to prevent the actions described in this complain[t] from reoccurring in the future."[101] But Mr. Still does not identify a specific policy that he seeks to have enforced, and appears rather to be requesting that Defendants Schmidt and Brunger be required to enforce D.O.C. policy as a general rule. Thus, the Court finds that this requested relief is not narrowly drawn to correct the violations Mr. Still alleges and appears to extend further than necessary to correct the alleged violations of his particular rights. Accordingly, the Defendants' Motion to

---

[99] Docket 25 at 6.

[100] Docket 25 at 6.

[101] Docket 1 at 9 ¶ B.1.

Dismiss is GRANTED with respect to Mr. Still's claim for injunctive relief requiring Defendants Schmidt and Brunger to enforce D.O.C. policy.

Mr. Still also seeks an injunction ordering Defendant Schmidt or Defendant Brunger to expunge the three disciplinary write-ups Mr. Still received in connection with the events described in his Complaint.[102] The Court finds that this requested relief is narrowly drawn and extends no further than necessary to correct the violations Mr. Still has alleged, and the Defendants have not argued otherwise. Accordingly, the Court finds that for purposes of this Motion to Dismiss, Mr. Still has stated a claim for injunctive relief with regard to the expungement of his disciplinary write-ups. Mr. Still's Complaint contains allegations that indicate that Defendant Brunger is the appropriate individual for this relief, as he is the Superintendent to whom Mr. Still appealed the write-ups. The Complaint does not allege that Defendant Schmidt has responsibility for MSPF disciplinary write-ups. Accordingly, the Defendants' Motion to Dismiss is DENIED with respect to Mr. Still's claim for expungement against Defendant Brunger,[103] and GRANTED with respect to Mr. Still's claim for expungement against Defendant Schmidt. As this ruling leaves no claims pending against Defendant Schmidt, Defendant Schmidt is therefore DISMISSED from this action.[104]

---

[102] Docket 1 at 9 ¶ B.2.

[103] As explained more fully in n. 98, this ruling applies solely in the context of this Motion to Dismiss.

[104] In his Opposition, Mr. Still argues that "Courts have allowed prisoners to keep high-level supervisors as defendants, even without evidence of personal involvement, for purposes of discovery to determine who the proper defendants are." Docket 32 at 7. However, the case law Mr. Still cites predates *Ashcroft v. Iqbal*, a Supreme Court case that significantly modified the pleading standard and renders Mr. Still's discovery argument obsolete. 556 U.S. 662, 678-79

Mr. Still may, however, amend his Complaint to include (1) specific allegations that demonstrate how his request for enforcement of D.O.C. policy fits within the PLRA's requirements and/or (2) specific allegations that indicate that Defendant Schmidt is an appropriate party for purposes of the requested injunctive relief.

### D. Personal Participation by Defendants Schmidt and Brunger.

The Defendants argue that Mr. Still's "damage claims against Commissioner Schmidt and Superintendent Brunger must be dismissed due to his failure to allege that the[y] personally participated in his alleged civil rights violations."[105] As a threshold matter, Mr. Still has not alleged any specific claims against Defendant Schmidt and does not seek damages from him; Mr. Still has named him as a defendant solely for purposes of injunctive relief.[106] Accordingly, the Court will consider the Defendants' argument as it applies to his claims for monetary damages against Defendant Brunger only.

To state a claim for monetary relief against a defendant, Mr. Still must allege that the defendant participated in causing his injuries.[107] "Section 1983 suits . . . do not support vicarious liability. '[E]ach government official, his or her title notwithstanding, is

---

(2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *cf.* Docket 32 at 7 (citing *Iqbal*).

[105] Docket 25 at 6.

[106] Docket 1 at 2, 8 ¶¶ 9, 91.

[107] *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012) ("To state a claim under § 1983 against state officials in their individual capacities, a plaintiff must plead that the officials, acting under color of state law, caused the deprivation of a federal right." (citations and internal quotations omitted)).

only liable for his or her own misconduct.'"[108]  Therefore, to hold a government official

liable in a § 1983 suit, "a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."[109]  The Ninth

Circuit has held that "[a] defendant may be held liable as a supervisor under § 1983 'if

there exists either (1) his or her personal involvement in the constitutional deprivation,

or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation.'"[110]

 The Defendants argue that Mr. Still has not alleged sufficient facts to support his

claim against Defendant Brunger.  In his Complaint, Mr. Still alleges that Defendant

Brunger "knew or reasonabl[y] should have known" of MSPF's failure to provide Mr. Still

with a non-functioning toilet and the events associated with that,[111] that Defendant

Brunger "is responsible for all subordinates and ensuring inmates constitutional rights

are upheld[,][112] and that Defendant Brunger "fail[ed] to curb the actions of his

subordinates."[113]   In his Opposition, Mr. Still argues that it is part of Defendant

Brunger's "job and duty" as superintendent to ensure that MSPF "policy and procedures

are being u[p]held and followed, in order to maintain a safe and orderly

---

[108] *Id.* at 1069 (quoting *Iqbal*, 556 U.S. at 677).

[109] *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.") (citations omitted).

[110] *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012) (citations omitted).

[111] Docket 1 at 4 ¶ 34.

[112] Docket 1 at 8 ¶ 91.

[113] Docket 1 at 9 ¶ 8.

environment[.]"[114]  He seeks damages from Defendant Brunger "for the conditions of plaintiff's confinement and the physical and emotional injury resulting from the defendants['] actions in conne[c]tion to the events described in this complaint."[115]

The Court finds that Mr. Still's Complaint does not adequately allege "either (1) [Defendant Brunger's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between [Defendant Brunger's] wrongful conduct and the constitutional violation.'"[116]  Mr. Still has thus failed to state a claim for money damages against Defendant Brunger.

Accordingly, the Defendants' Motion to Dismiss is granted with respect to Mr. Still's claim for money damages against Defendant Brunger.  This ruling does not preclude Mr. Still from filing an Amended Complaint that includes additional allegations against Defendant Brunger that satisfy the requirements outlined above.

### E. Amendment of the Complaint.

An amended complaint supersedes an original complaint.[117]  After amendment, the Court will treat the original Complaint as nonexistent.[118]  Thus, any causes of action alleged in the original Complaint which are not alleged in the Amended Complaint are

---

[114] Docket 32 at 5.

[115] Docket 1 at 9 ¶ 1.

[116] *Starr*, 652 F.3d at 1207.

[117] *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).

[118] *Ferdik*, 963 F.2d at 1262.

waived, and any Defendants named in the original Complaint who are not named in the Amended Complaint are dismissed.[119]

If Mr. Still amends his Complaint, the Amended Complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.[120]  Mr. Still must clearly designate on the face of the document that it is the "Amended Complaint."

## CONCLUSION

For the foregoing reasons, the Court orders the following with regard to the Defendants' Motion to Dismiss at Docket 25, as joined by Defendant McKeown at Docket 37:

1. The Defendants' Motion to Dismiss is GRANTED in part as follows:

   a. Mr. Still's claim for money damages against Defendant Brunger is DISMISSED.

   b. Defendant Schmidt is DISMISSED from this action.

   c. Mr. Still's claim for an injunction requiring enforcement of D.O.C. Policy is DISMISSED.

2. The balance of the Defendants' Motion to Dismiss is DENIED.

---

[119] *Hal Roach Studios*, 896 F.2d at 1546.

[120] For example, the proposed Amended Complaint attached to Mr. Still's earlier Motion for Leave to File an Amended Complaint would not meet this requirement, as Mr. Still submitted a document containing only the paragraphs of the Complaint that he intended to modify and did not retype the Complaint in its entirety.  Docket 30 (denied at Docket 31 on grounds that amendment was unnecessary because Mr. Still sought only to correct a clerical error).

3. Mr. Still may, within 30 days of the date of this Order, file an Amended Complaint in compliance with the terms of this Order.

DATED this 15th day of March, 2013, at Anchorage, Alaska.

/s/ Sharon L. Gleason_____
United States District Judge